MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* HILL.

4-5878 138 S. W. 2d 783

Opinion delivered April 1, 1940.

■

*Henry Donham,* for appellant.

*William F. Denman,* for appellee.

McHANEY, J. Appellee is a negro. He was a witness in the case of *Mo. Pac. Rd. Co.* v. *Barham,* 198 Ark. 158, 128 S. W. 2d 353, an action to recover damages for personal injuries growing out of an accident at Wild Cat Crossing, north of Prescott, on November 14, 1937.

On the night of January 20, 1938, prior to the trial of the Barham case, appellee was picked up at his home at about 3 a. m. without any warrant, or other semblance of lawful right, by appellant Brownlow, a special agent of the railroad company, and by one Copeland, a state police officer, as testified to by him, but by Copeland alone, as testified to by Copeland, and driven in an automobile to Texarkana, where he was placed in jail and was later assaulted and severely beaten. He brought this action against appellants to recover damages for the personal injuries sustained by him. Trial resulted in a verdict and judgment in his favor for $1,500.

For a reversal of this judgment appellants first say the court erred in not directing a verdict in their favor at their request; that the evidence was insufficient to show that appellee was injured or damaged by Brownlow, while acting in the scope of his authority as a special agent for the company. We cannot agree with appellants in this regard. While the evidence is in dispute as to whether Brownlow was present with Copeland at the time appellee was taken from his home at

3 o'clock in the nighttime and driven to Texarkana, and also as to whether Brownlow actually participated in the striking and beating of him, we cannot say there was no substantial evidence to support the verdict. He testified that Brownlow, Copeland and another man came to his home, forced him into an automobile, drove through Prescott to Hope, where Brownlow and the other man got out, and that Copeland drove him on to Texarkana where they put him in jail, and that Brownlow came on later; and that the latter seemed to have charge of the "party." In answer to a question as to what was said, he answered: "I ask him what he (Brownlow) wanted with me and he says, 'you know why we brought you down here,' he says 'you and Barham pushed that car on the railroad track and all I wish is that it had killed both of you so-and-sos,' and I said, 'No, sir, we didn't,' and then he hit me with a flashlight and he says, 'I'll take you over here and you'll talk,' and then they took me to another jail." He then told of them beating and kicking him until he was not at all himself; that he was told he would tell a different story or he would be killed. At the second jail (one was the city jail and the other the county jail), he says he was whipped and beaten again by Brownlow and another man. He refused to change his story as to how the accident happened at the Wild Cat Crossing, but says they finally got out a box that looked like a coffin, shot him in the back with blanks filled with mercurochrome that made him appear bloody and then told him they wanted his dying statement. He was kept in jail some ten or twelve hours and was taken back home by Mr. Copeland. He was corroborated as to the beatings by a prisoner who was in the jail, who was impeached by a contradictory statement in writing made by the witness before the trial.

Appellants introduced a number of witnesses who contradicted appellee's statements that Brownlow was with Copeland when appellee was picked up at his home, and that Brownlow took any part in the whipping and beating. It is undisputed that Brownlow and Burk, another special agent, were making an investigation of

the Barham case and were endeavoring to show that Barham and appellee framed the crossing accident. So it is undisputed that Brownlow was on the master's business. Whether the latter was with Copeland when appellee was arrested and whether he actually struck a blow or personally inflicted any injury upon appellee, we think is unimportant. The evidence justified the jury in inferring that the scheme to abduct or kidnap appellee was concocted by Brownlow who induced Copeland to invade the privacy of appellee's home and to trample on his rights as an American citizen, and to take him to Texarkana for the purpose of persuading or extorting from him a confession of guilty knowledge in connection with the Barham case. It was no doubt thought that Copeland, being a state police officer, would dignify and justify the outrage, by fronting for Brownlow, and thus protect both him and his company from the consequences of this unlawful act. Also it is testified by a number of witnesses that no one whipped appellee, except the sheriff of Miller county, who said he whipped him for sending out clandestinely a note containing an appeal for help. The jury had the right to and did disbelieve them, but assuming that this testimony is true, still it does not exonerate appellants, for the jury had the right to infer, as we do, that but for the wrongful and unlawful invasion of appellee's rights, he would not have been in jail in Texarkana and would not have been beaten and injured. Both Brownlow and Burk knew that Copeland was to pick appellee up and take him to Texarkana. They informed Copeland where they might be found. They were on the job shortly after appellee and Copeland arrived in Texarkana. So the jury had the right to find and were justified in finding that it was all a put up job by the special agents to get appellee in a place where they could put him on the rack and torture him into telling the truth as they wanted it. The Gestapo of Germany have no place in this country.

Other questions argued are that the court erred in giving appellee's instruction No. 1, and that the verdict is excessive. We think no error was committed in the

giving of said instruction. It is said there is no evidence to sustain it in certain respects, but only a general objection was made to it. If the court's attention had been called to the language now complained of, it might have corrected it in that respect. Nor can we agree that the verdict is excessive.

Affirmed.